Clerk, please bring the court hearing this quarter's down session. The Honorable John T. McCullough, presiding over the session, will be required. This case is the Venture-Newberg v. Workers' Compensation Comm'n 411-084-7. Counsel, please. My name is Jonathan Nessler, and I represent the employee in this case, Ronald Doherty. On March 24, 2006, my client was catastrophically and permanently injured. Prior to his injury, Mr. Doherty worked as a pipefitter for 30 years. The employer in this case is the venture. The venture is a contractor, and it performs maintenance work on power plants. For the job at issue today, the venture contracted with Exelon Power Plant, located in Cordova, Illinois. When the venture would contract for the maintenance work in a case like this, where it was during a typical fuel outage, there was a limited amount of time that the work must be performed in. So in order to meet this time requirement, under its agreement with Exelon, the venture would first determine how much manpower was necessary to perform the work. They would then approach a local union. In the case of the Cordova Power Plant, they approached Local 25, in order to acquire the skilled labor necessary to perform the job. This is a nuclear power plant, isn't it? Yes, Your Honor. If the skilled labor was not available locally, the venture was required to reach out to remote unions in order to fill its void in employment. So along comes the claimant, he wants to take advantage of this opportunity, and he temporarily sets himself up right outside the job site in Cordova, correct? That is correct, Your Honor. The venture was required in this case to reach outside of its local union and ask skilled employees to travel in to help fill the work void. The claimant volunteered to do that. Nobody required him to go there. So can we agree on one thing? Generally, if an accident occurs while the employee is commuting to and from work, generally that's not compensable unless it falls within an exception. Is that correct? Yes, Your Honor, that is correct. So he was commuting to and from work. We can agree with that much? Yes, Your Honor. Aside from the fact that he had to go 200 miles to set himself up temporarily. I'm curious as to this finding of a traveling employee. How is he a traveling employee when that's defined as somebody who's traveling away from the job site? Here he's going to the job site. How does he qualify as a traveling employee? I believe, Your Honors, and thank you for the question, Your Honor, I believe that the question is best addressed by the Wright case where they set out to define what a traveling employee is. They first look at the traditional definition of a traveling employee. And that is an employee who, as Your Honor has stated, travels away from the employee's premises. And they ask themselves, is it any different whether the employee is requested by an employer to travel to a distant job site where he would stay for a given amount of time, in this case 20 days. And when the work is complete, and I think a close reading of the Wright case, you'll see that the employer in that case urged that an hourly construction worker or an hourly maintenance worker should be treated differently than an ordinary traveling employee, somebody who's required to travel frequently for their job. And the court says no, that there is no rational basis to distinguish between an employee who's continuously traveling or an employee like an hourly construction worker who's requested to go to a remote job site in order to perform his task. But that's the point I'm overlooking. This job site was not the employer's premises, correct? That is correct, Your Honor. I mean, this was a contractor, the venture was a contractor. Is there anything in the record as to where they operated out of? Yes, Your Honor, Williamton, Illinois. All right. And so as far as the definition of traveling away from the employer's premises, this job site was not the employer's premises. That is correct, Your Honor. And your client had worked at other job sites that he'd been sent to by the venture. That is correct, Your Honor. The premises for this job was one location. That was the job site that the claimant was going to each and every day. He wasn't traveling away from the job site, was he? Your Honor is correct in his statement, and that is identical to the employee who is contained in the Wright case and also the employee in the Chicago Bridge case. In both of those instances, and I'll talk about Chicago Bridge because I think it's a little more similar to the facts of this case, the employer asked that an employee travel to a remote job site. He intended to stay at that job site until the entire job was complete, returning each day to the job site. Well, where is the remote traveling here? In this case, the job site was one fixed location that the employee moved to to be closer. Where is the daily traveling away from a job site then? Well, the traveling in this case arises out of… Oh, but not the employer's premises. It was not the employer's premises. That's correct, Your Honor. The traveling in this, the need to ask employees to travel, was in order for the venture to fulfill its agreement with Exelon. They did not have adequate skilled labor locally at Local 25, which is out of Rock Island. And in order to fill that void, in order to fulfill its contract with Exelon in the amount of time necessary, they had to ask employees to travel in to that area. Ask employees? He wasn't employed by Exelon until he took the job. Well, he wasn't employed by Exelon at all, Your Honor. He was employed by the venture, the venture being a contract with Exelon. And the employee-employer relationship in this is not in dispute. The way that his employment with Exelon worked is identical to how the employment worked at Chicago Bridge. Mr. Doherty was asked to work a job. He was not required to take the job, nor was the employer required to offer that job, identical to the facts at Chicago Bridge. If he accepted the job, he was officially an employee the moment he punched in. And at the end of the job, at the end of, in this case, 20 days, he would be terminated. All of these facts are directly on point with the employee in Chicago Bridge, which the 5th District determined to be a traveling employee under that set of facts. So what is the rule that you're asking us to announce here? How many miles does the person have to travel? I mean, somebody moves themselves temporarily 50 miles closer to the job, 100. What's the rule going to be? I don't believe a bright-line rule is in order in a case like this. I believe that it's a factual evaluation to be made by the commission. And if the facts support the commission's decision, then the commission's decision should be upheld. The trial court, in this case, applied a de novo review. The commission found that the employee was injured, that his injury arose out of and in the course of his employment. Why wouldn't the traveling employee issue be a de novo review? The facts are not in dispute, are they? Yes, Your Honor, they are. The first fact in dispute is whether or not the claimant's injury arose out of and in the course of his employment. I've cited several Supreme Court cases. We're talking about the facts of the case, not whether. I mean, what happened, why he went there, what he was doing every day. The salient facts are not in dispute, are they? They are, Your Honor. The first fact in dispute is the issue itself, which is always. That's not a fact. That's a conclusion. And the second fact in dispute is whether or not Mr. Doherty was required to be within one hour of the job site. Mr. Doherty testifies that he was required by the venture to be within one hour. His testimony is bolstered by Todd McGill, and both of these testimonies are relied upon by the commission in their decision. The venture denies that he was required to be within one hour of the job site, creating the disputed fact. If the court doesn't believe that this is a sufficient disputed fact, I would point out that the Henry case, a Supreme Court case, states that before a question is a question of law and subject to a de novo review, the facts must not only be undisputed but also subject to only one inference. In this case, the facts are susceptible to dual inferences. This is evidenced by the fact that the arbitrator in this matter, her set of facts came to one conclusion, that Mr. Doherty's injury did not arise out of it in the course of his employment. However, when put before the commission, the commission drew a separate inference from these facts. But is the issue of one hour even relevant to the question? Yes, Your Honor. It's 200 miles away from home. I believe that it is, Your Honor, because by the commission relying upon the defendant's testimony, by the employee's testimony that he was required to be within one hour, that is a requirement to travel from Springfield, which is over 200 miles, to be within an approximate geographic location. Would it make any difference whether he was required to be within one hour or not? It's a question of whether he was a traveling employee. I believe so, Your Honor, yes. So you're conceding the issue that if he wasn't required to be within one hour, he wouldn't be a traveling employee? No, Your Honor. I believe that it's one fact among… Can't you have it both ways? I believe that it's one fact. I'll give you a very important fact amongst several other facts that indicate that the job required Mr. Daugherty to travel in, or more to the point that the venture required its skilled labor, its skilled employees to travel from a remote location in order to fill the work void that was present. What skilled employees? These people are volunteering for this job. They're not in the payroll of Exelon, are they? Well, not of Exelon, no, Your Honor, but they are on payroll of the venture. How are they on the payroll of the venture? Well, they're employees of the venture. The venture contracted with Exelon to perform maintenance and hired, among others, Mr. Daugherty as an employee to perform that maintenance. Was he on this payroll? Did he volunteer for this job? The way that it works is once the venture has depleted the workforce locally, they then would post jobs with remote unions. Mr. Daugherty came across this job posting. He was a union member and saw a job posted. You're correct, Your Honor. At the time that he decided to take this and move this, he wasn't employed by anybody at that point, was he? No, Your Honor, but he had been employed four prior times, five counting this instance, with the venture, and each one of those times, one of those times including the Cordova Power Plant, he was under the understanding he must be within one hour. So if you're a union person and you have an opportunity for a job anywhere in the state of Illinois, then you automatically become a traveling employee. It has to be your argument, right? No, Your Honor. I don't believe that is. The argument that I'm putting forward is when an employee requires, or excuse me, an employer requires a certain skilled laborer and is unable to fill that void locally and is then required to ask an employee to travel in. It's not an employee. You keep calling him an employee. At the time he's asked, he's not an employee of anybody. He's a union worker looking for work. To ask a skilled laborer then, I'll move away from the word employee, to become an employee upon arrival. Then he's automatically a traveling employee. Yes, Your Honor, I believe so because it changes the fundamental reason behind not, when one's traveling to and from a work site, the reason that's not considered to be in the course of employment is because the employer generally has no stake in where that employee is staying. When an employer, he doesn't have a stake here. He can hire somebody within 20 miles. He doesn't have to hire somebody 200 miles away, does he? Yes, Your Honor. He depleted the local workforce who were able to perform the work necessary. In other words, they went to Local 25, ran out of employees, and then brought in employees from remote locations, asked them to travel in to fill a need for the employee. And so they automatically become traveling employees.  Yes, Your Honor. That is what I'm saying. Is that the definition of the case of a traveling employee? I believe that the case, yes, Your Honor, it is. The Wright case examines for the first time whether or not an employer asking an employee to travel to a remote location to perform work. But that was away from the normal employee premises in Wright, correct? Yes, Your Honor. He was already working at the employee's premises and then asked to go somewhere else. That's not what happened there. Perhaps the Chicago Bridge and Iron is closer, Your Honor. In that case, the employee was very similar. The employment was very similar to the employment in this case where Mr. Daugherty had worked with the employer at various locations throughout Illinois. As he worked, as his work was complete, he was terminated, the same as the employee in that case. The employee would then have another job and offer that job to the employee in that case. He was not required to offer the job to the employee in Chicago Bridge, nor was that employee required to accept that job. And still, because the employer in that case is asking an employee to move to a remote location to perform work, work that will take a considerable amount of time, even with the understanding... Why does he have to take a considerable amount of time for him to be a traveling employee? It doesn't, Your Honor. You seem to be creating issues that don't exist. The mileage is irrelevant. The question of whether he's a skilled employee is irrelevant. The question is, is he required to travel away from the employer's premises to perform the work? And if the answer to that question is yes, it occurs to me he falls within the definition of a traveling employee. Why add all these other conditions? Well, I believe that first having to travel away from the employee's premises is certainly the underlying definition of... Well, that is a definition of a traveling employee. I mean, if an employer cleans houses and he has five women that clean houses for him and they travel to a different house every day, they're traveling employees. They could be two miles away from the employer's premises. They're still traveling employees because they're required to travel away from the premises. And they assume the risks of travel as part of their work. Now, the question becomes in this place, was he required to travel away from the employer's premises? Yes, Your Honor, he was. Okay. Where are the employer's premises? Wilmington, Illinois, Your Honor, which is near Chicago. This would be near the Quad Cities. And the fact finder in this case is the commission. Do you agree with that? Yes, Your Honor. I believe the appropriate standard of review would have been... Well, they found that the respondent wasn't required or they found that the respondent didn't require the claimant to stay within a certain distance of the Cordova plant. Counsel, you have time on rebuttal. Your time is up right now. Counsel, please. Can you please support? Theodore Powers, representing DaVenture. Following up, Justice Woodridge, with your comment, page 6, you are correct. The commission specifically finds that the respondent did not demand that petitioner lodge within a certain distance. Mr. McGill also testified that there was no requirement that they had to stay close to the plant. This whole thing of you have to stay close, it's an emergency, there's no workers that are qualified to do this, and we have to go out. I think the commission described it as some big recruitment going on with the locals. I mean, what we have is a normal, everyday situation among union situations. You have a big job that comes up. Your local may not be able to handle it. You're looking at the number of people you need. And so you go to your other locals and just outside the territory and say, you know, we're going to need this many people. You know, let me know if there's an interest. And that's what happened here. The job that came in, Mr. Haynes, I believe, was the business agent for the local in Springfield where Mr. Doherty is a member. And he asked him, you know, he looked. There's nothing going on here. So, you know, there's a job going to come up at the local plant, so if you want it, you know, you can take it. And so according to the testimony, Mr. Doherty talked with Mr. McGill. They decided, okay, we'll go ahead and do that. And you get the impression they've done that before. They made their arrangement at this particular lodge. They figured out how much money they would be making for the short period of time. After we take off our travel expenses, that's the way it is. So we know the facts. So where is the employee's premises for purposes of the application of the traveling employee, doctor? My view is it's actually at the plant. It's at Cordova. Where he was hired to go. That's where he was going. That's not the employer's premises. It's not the employer. No. Let me finish. Traveling employees defined in every case as traveling away from the employer's premises. I mean, there's no doubt in this case he was not working at the employer's premises. He was working at a job location that this contractor, the venture, had a job at. And it has jobs at lots of locations. And it sent this individual, this employee, to various other job locations over several years. The way I view it, Justice, is that this job, in terms of where this worked, is going to take place. Well, let's take Justice Huffman's example. I mean, if you view it that way, how would you ever have a traveling employee if what we're referring to is where they work, then the housekeeper, every house they go to, is the same as the employer's premises. So how would anybody ever be a traveling employee? This job was set up for the Cordova plant. The contractor was at the Cordova plant. That's where the work was going to take place. This job was for the housekeeper set up to clean a particular house. That's where the person is going to work. Well, I mean, I'm looking at this in terms of traveling employees. It's like I work in my office. Now I have to travel down here today for this meeting. Now I'm coming down here. I'm a traveling employee for the purpose of what I'm doing here. Now I'm going to go back to my office. If I'm my view, my way of looking at it is, let's assume Mr. Daugherty is at Cordova and he's working, and they say to him, you know, Ron, we need you to get over to the Clinton plant. There's a problem. Then he's a traveling employee. Now he's a traveling employee. That's when he's a traveling employee. Don't argue with yourself. Let's take a situation like Walgreens or Costco or something. So if somebody drives 50 miles to their Costco, maybe that's not the main plant, but there's a bunch of different stores at the headquarters, then I suppose they would automatically be a traveling employee because that's not the main premises of the employer. And it could be. Now hold on a second. Hold on. Come on. Main premises, it wasn't their premises at all. They didn't own the nuclear power plant. His employer didn't own that plant. His employer was miles and miles and miles away, and he sends him to a location other than the employer's place of employment. Query, is he then a traveling employee? Or is he not? Or should there be a different rule for the construction industry? I don't know how. I mean, what we have here, from my view, and maybe I'm just being really simplistic about the whole thing, he's got a chance to make some money. He's got a choice to make. He does not have to take this job. It's 200 miles away. The fact that he's now going out to that job, I don't know how that makes him a traveling employee. First of all, he's not even out there yet. They're behind him. And I don't understand where he's coming from. He's coming from his house. He's leaving from his residence. How do you leave from the venture? Where's the venture at? He was leaving from a motel. No, no, I'm talking about in terms of going to that location. My view is much bigger, Justice, than yours. You're saying that he's leaving from the motel. The reason he's at the motel is because of the travel that's required back and forth that makes it virtually impossible to do the job that he's supposed to do and to do the commute. So he sets up temporary housing. So you like the exigency theory. Pardon me? You like the exigency theory that would make him an exception to the 25. What do we do? Okay, so let's assume that he comes out and takes this job remote from where he has chosen to live. All right? And right next door to the lodge is a pipe fitter, Joe Pipefitter, who's part of that loco, and he's driving to work, and he has an accident. Now, is he not a traveling employee, or is he a traveling employee, too? Well, if he's not going to the employer's premises, I guess he is according to the definition. Unless you want to change the definition. But I guess the way I'm looking at it is that is the employer's location. That job is at the Cordova plant. So you are arguing for a construction exception? No. There is no need for an exception here for that. I'm losing it here. We're getting confused. Well, I think prior examples that were offered to you were, again, the housekeeping job. Where were you hired? Who's your employer? Where are they located? And what's the nature of the business? Well, but for housekeeping purposes, I mean, if you take that view, you normally are working for someone who then sends you out to those homes. Correct. Going out into the world, driving around. Does this employer at, where is it, Williamton or somewhere? Where's their place of business? Venture? I'm not exactly sure. Oh, I think somebody said Williamton. Yeah. Okay. Obviously, there's no pipe fitting or construction going on at Williamton, is there? I think if they're going to be traveling, he has to go to Williams, wherever the location is, and then go from there and be instructed or directed to go to the other location. That, to me, is a traveling employer. Okay, so you have to touch first base. You have to go somewhere, yeah. I mean, here's where he's going. You have to touch first base. You can't get a phone call from a supervisor at Williamton and say, be up to Cordova in six hours. Once you're hired, and I think that's legitimate. That's what I think I said earlier. If he's hired and he's working in Cordova, and then he gets a phone call and says, get over to Clinton or wherever, he's a traveling employee now. But where is he hired? My view is that the job offer is there. He's got to now go out to Cordova to get the job. Well, see, I think it's fundamental whether he has to go out there to get the job or whether he got the job in Williamton. He still had to go out there and undergo, I think, the radioactive check and some of these other things that were required when he went out to the plant. I don't know what the last necessary was for that. Now we're getting into the employer area. Pardon me? One day. He got there the first day. I think he worked ten hours. I think he had to go through that clearance. I'm not exactly sure. He was hired by the time of the accident. Yes. He worked the first day. He went back to the motel. I think what they did is they actually went straight to work and then checked into the hotel that night, and then in the morning they got back to work. So I really, I mean, I'm looking at this. I'm not sure how to address some of the comments that have been made. First of all, yes, Mr. Doherty did work on several occasions for DeVenture, working at some of the power plants or whatever. He was not a continuous employee for them. He was not a long-term employee for them, which, quite honestly, is different from the case of Chicago Bridge. Chicago Bridge, quite honestly, I don't think has any comparison here. The only thing that's similar to Chicago Bridge in this case is that he was driving from his motel to work when an accident happened in his vehicle. The gentleman in Chicago Bridge was a permanent employee of that company. He was pushed around throughout the state working in all these different locations. He was paid for his travel, and that's what he was doing there. So the only thing similar with Chicago Bridge and these facts here is simply he's in a motel, he's going to work, and right before he used to work the afternoon. The commission decision I find somewhat striking. Justice Hudson, you had mentioned how he had a traveling employee. I actually looked at it as well in terms of their conclusion at the very end that Mr. Daugherty was exposed to a risk greater than that which the general public was exposed. So they also found that he was exposed to a greater risk because he got up at 6 o'clock in the morning and there was ice on the road, and because there was ice on the road, no one got a chance to get it cleaned off yet, and so therefore there was an increased risk for him to have an accident. And I'm just shaking my head. I don't understand that as well. If he was a traveling employee, did they even need to make that determination? I know, but I'm just saying. I'm not even sure why it's in there, but I looked at that, and it's just like, okay, is there anything else you want to talk about here? It's a decision looking for a rationale. It's like what I was going to say. That's how I viewed the decision. I think that Judge Kelly did the right thing. There are no disputed facts that I'm aware of. Mr. Daugherty, although initially he said it was his understanding to stay close by, later said that, well, he thought about the commute and he thought that it would be just easier based on the money he was going to make to stay close by. All the other facts I think are fully undisputed. They demonstrate how he decided to accept that job, that he chose to do this. It was a voluntary thing as opposed to he was forced to do it. There were no other jobs in his union, so he could go and do that. If there was a job within his local, he couldn't take that type of job. No pay, no travel time, no pay time by venture in terms of getting over to the lodge. No accommodations made for the lodge. He wasn't on call at the time of the accident. He wasn't told to come in early at the time of the accident. I think all the various factors demonstrate the basic rule, which is coming and going to work is not in the course of employment. I believe that the decision by the arbitrator and as reinstated by Judge Kelly is proper. Thank you. I'd like to begin by addressing the question of fact again. The Supreme Court case of Wise clearly states that if the issue is whether an injury arises out of and in the course of employment, that the Commission's evaluation of this issue necessarily entails factual conclusions and therefore should be subject to a manifest weight of the evidence reviewed. The trial court erred when it failed to apply the appropriate standard of review to this case. Well, one of your major facts that you've been arguing, the Commission found opposite. It wasn't required to be close to Cordova's plan. Well, they found that a close reading, I think, of the Commission's decision will show that they found that the Commission states they did not require that. On page A364, at the very bottom, it states that the petitioner's understanding was that the respondent wanted the workers to be within an hour's traveling distance of the plant. It also states that as a practical matter, the employment with the venture required that they be within a distance close to the plant because it would be impossible for an employee to travel 200 miles while working 12-hour days, seven days a week. So a close reading will show that the fact that's found there is that the venture essentially denies that it required employees to be within an hour of the plant, but the conflict itself is still within the decision at the bottom of A364 where it states that the petitioner understood from the venture that he was required to be there and they rely upon his unrecanted testimony when coming to that conclusion. I just did want to mention that the greater risk to the public versus not a greater risk to the public. Okay, so they found that the petitioner understood that. Yes. Okay. But how does that mean that that's reality? Well, he testifies. His actual testimony is that he was basing his understanding of this upon conversations with individuals that he knew to be representing the venture in which the venture has a reason. That's the basis for his understanding, but it may not comport with reality. What did the commission find? Did the commission find that he was required to be within that distance of the plant? Well, what they found was that it was his understanding he was required and that the venture denied that understanding. Yes, but then what did they conclude? That as a practical matter, he was required to be within an hour of the plant. Yes, Your Honor. And I think that that's important when looking at the case of Chicago Bridge where, again, if I may finish my point, Your Honor, if it turns red, the Chicago Bridge case is the exact example that Your Honors were speaking to the employer's counsel about, and that is a telephone call to an employee asking him to travel to a job site that was not their premises and stay a certain amount of time at that job site, working a job until it was complete, and then returning home to the place where the employee would rather be. So he was an employee when we're going through the last act, all that analysis? I think it's important, and a very important question Your Honor is asking, because Chicago Bridge specifically states that he hadn't even arrived at the job site yet. He wasn't even officially an employee in that case, and he still was considered to have been injured in the course of his employment despite this fact. So I believe that essentially that's an irrelevant fact when determining whether his injury arose out of an employment. And unless anybody has any other questions, I... Thank you, counsel. Thank you. Court will take the matter under advisement for disposition.